IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02007-MSK-KLM

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,
REPUBLIC AIRWAYS HOLDINGS, INC., and
FAPAINVEST, LLC,

     Defendants.

FRONTIER AIRLINES PILOTS ASSOCIATION,

     Interested Party.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Plaintiff's Motion to Compel Subpoena Compliance by Frontier Airlines Pilots Association** [Docket No. 54; Filed March 14, 2012], and **Non-Party Frontier Airline Pilots Association's Motion to Quash or Modify Subpoena in Part, or for Protective Order** [Docket No. 62; Filed April 9, 2012] (collectively, the "Motions").[1]  The Motions are referred to this Court for resolution. [## 55, 63].  The content of Non-Party Frontier Airline Pilots Association's ("FAPA") Motion to Quash parallels nearly identically the content of its Response filed on April 9, 2012 in opposition to Plaintiff International Brotherhood of Teamsters, Airline Division's (the

_____

[1]  The parties initially complied with the undersigned's discovery dispute procedures by calling Chambers, and the undersigned gave the parties permission to file appropriate written discovery motions.

"Teamsters Union") Motion to Compel. *Resp.*, [#61]. On April 23, 2012, the Teamsters Union submitted a Reply in support of its Motion to Compel. *Reply*, [#70]. The Teamsters Union's Response in opposition to FAPA's Motion to Quash incorporates by reference its Reply filed in support of its Motion to Compel. *Resp.*, [#71]. FAPA submitted a Reply in support of its Motion to Quash. *Reply*, [#75]. The Motions are thus ripe for review.

## I. Background

The Court incorporates the case background as set forth in its Order issued April 24, 2012 [#72]. The Motions at issue concern production of documents responsive to a subpoena served on FAPA by the Teamsters Union on December 5, 2011. *See* [#54-2] (requested documents). FAPA served its objections to the subpoena on January 16, 2012. [#54-1]. FAPA produced 94 emails on February 10, 2012, [#54] at 3, and a privilege log on February 29, 2012 [#54-4]. The Teamsters Union challenges FAPA's objections to production premised on 1) internal union privilege as to 91 documents; 2) undue burden regarding documents post-dating June 28, 2011; and 3) overbreadth and relevance to Requests 3, 5, 6, 13, 14, and Modified Request 4. *See* [#54] at 3-4; *see also* [#62] at 2 (agreeing to characterization of three categories of documents at issue). The Teamsters Union requests that the Court issue an order compelling FAPA to produce all documents responsive to the subpoena. [#54] at 16.

In its Motion to Quash, FAPA asks the Court to quash or modify the subpoena at issue, by limiting its required production to those documents already produced. *See* [#62] at 12. FAPA contends that "the gravamen of each [claim at issue] is what RAH and Frontier knew and intended when they entered into LOA 67 and the Commercial Agreement." *Id.* at 14. Thus, FAPA avers that it should not have to produce documents that concern solely FAPA, and it has produced all documents related to RAH and Frontier.

*See id.* at 16.   FAPA characterizes the discovery requests at issue as "a highly invasive fishing expedition."   *Id.* at 42-43.   As FAPA agrees with the categories of objections delineated by the Teamsters Union, *see id.* at 2, the Court addresses each of the three areas of dispute in turn.

## II.  Analysis

### A.    Internal Union Privilege

The Teamsters Union asserts that an internal union privilege does not protect documents related to "labor negotiations and union representation of grievants in disciplinary proceedings."   [#54] at 5.   The Teamsters Union contends that FAPA should not be able to assert the internal union privilege as a blanket reason to withhold production of all documents related to internal union communications.   *Id.* at 7.   It believes that FAPA is not entitled to a protective order precluding production, because as of June 28, 2011, the Teamsters Union, not FAPA, is the exclusive bargaining representative of Frontier pilots. *Id.* at 8-9.

In Response (and in its Motion to Quash), FAPA attests that "it produced documents reflecting communications between FAPA and the Company Defendants [RAH and Frontier] regarding LOA 67 and the Commercial Agreement."   [#61] at 15.   However, FAPA concedes that it has not produced "documents reflecting purely internal FAPA strategies, or communications with FAPA members not shared with [RAH and Frontier]."   *Id.*  FAPA objects to the production of these documents on the basis of relevance, *id.* at 16-17, and privilege, *id.* at 18-19.  Regarding privilege, FAPA asserts that legal authority supports the existence of privilege protecting the disclosure of internal union strategy, which is referred to as "labor relations evidentiary privilege," or, as reflected in the privilege log, "internal union" privilege.  *Id.* at 19.   FAPA emphasizes the importance of this privilege to ensuring

3

unions' abilities to meaningfully function as a bargaining representative and employees' rights to organize and associate with each other. *Id.*

Alternately, FAPA asks the Court to protect disclosure of this information as confidential. *Id.* at 28. FAPA states that public policy and federal labor law recognize the importance of protecting materials related to collective bargaining strategy to the effectiveness of collective bargaining. *Id.* at 28-29. FAPA contends that its status as the former bargaining representative does not nullify the confidentiality protections which apply to the internal communications that occurred before the Teamsters Union became the exclusive representative. *Id.* at 30. FAPA asserts that internal union bargaining strategies are analogous to confidential business strategy and trade secrets. *Id.* at 31. FAPA avers that it and its supporters have the right to pursue resuscitation of its status as the exclusive bargaining representative for Frontier pilots, and disclosure of the internal communications at issue would allow an unfair advantage to the Teamsters Union as a potential competitor. *Id.* at 32. In sum, FAPA asks the Court to prevent the disclosure of the 91 documents it contends are subject to the internal union privilege, because the information within those documents is irrelevant, and public policy dictates "preserving the collective bargaining process and internal union communication" as confidential. *See* [#62] at 25-26.

In Reply (and in Response to FAPA's Motion), the Teamsters Union argues that the information it seeks is directly relevant to the allegations stated in its proposed Amended Complaint. *See* [#70] at 2-3. The Teamsters Union filed its Motion for Leave to Amend Complaint and Revise Scheduling Order on April 6, 2012 [#59], just eight days after the District Judge's order on the previously pending Motion to Dismiss [#57]. The Motion for Leave to Amend is referred to this Court and ripe for resolution as of May 11, 2012. *See* [#76].

The Teamsters Union states that documents regarding FAPA's internal communications are relevant to its claims. [#70] at 9. For example, the Teamsters Union explains that the President of FAPA, Jeffrey Thomas, is also the sole member of Defendant FAPAInvest. *Id.* at 5. "If FAPA's President Jeffrey Thomas sent an internal FAPA email to its Vice-President Scott Gould reporting that Company defendants' CEO, Bryan Bedford, stated to Thomas in a telephone conversation that the purpose of separating LOA 67 and the Commercial Agreement was to promote and preserve FAPA's representation of Frontier pilots," such an email would be directly relevant to the crux of this matter, which is that the parties to and the effects of the LOA 67 and Commercial Agreement impede the Teamsters Union's abilities and rights as the Frontier pilots' exclusive bargaining representative. *Id.* at 9.

The Teamsters Union again emphasizes the absence of an applicable privilege (namely, the inapplicability of the "internal union" privilege) to the documents withheld by FAPA. *Id.* at 10. Further, the Teamsters Union contends that FAPA is not entitled to a protective order precluding disclosure. *See id.* at 12. It claims that the authority cited by FAPA is distinguishable from the present matter, because this case does not concern negotiating parties in "an ongoing relationship in which they would continue to deal with each other and renegotiate collective bargaining issues repeatedly." *Id.* Because the Teamsters Union is the present exclusive bargaining representative, it believes that FAPA cannot be harmed by disclosure of its previous bargaining strategies. *Id.* at 12-13.

Regarding the discovery dispute at issue, the Court's conclusion is three-fold: 1) documents identified as protected by "internal union" privilege that relate in any way to the LOA 67 and Commercial Agreement are relevant to the claims at issue (regardless of the proposed Amended Complaint); 2) the Court declines to impose the asserted internal union

privilege, because such a privilege is not recognized by binding precedent; and 3) the protective order in place in this lawsuit is adequate to assuage any confidentiality concerns of FAPA (and, in any event, the protective order may be modified to include a provision for "attorneys' eyes only" designations).

### 1.    Relevance

The scope of discovery is broad and "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (citation omitted).  Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter . . . subject to the limitations imposed by Rule 26(b)(2)(C)."  *See also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (citations omitted) (noting that "request for discovery should be considered relevant if there is 'any possibility' the information sought may be relevant to the subject matter of the action").  Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every man's evidence,'" the Federal Rules broadly define the scope of discovery.  *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

The District Judge framed the claims at issue in the Order on Defendants' Motion to Dismiss.  *See* [#57].  The District Judge found that the Teamsters Union presents a plausible claim that Defendants Frontier and FAPAInvest violated the RLA through the terms of the Commercial Agreement, because "even though [the Teamsters Union] is now

the certified representative of the pilots covered by [the Collective Agreement], only FAPAInvest is permitted to negotiate the final terms of any plans or agreements governing such benefits," as stated in the Commercial Agreement.  [#57] at 13.  This has the effect of preemptively precluding the Teamsters Union "from being able to negotiate on behalf of members of the bargaining unit after its certification."  *Id.*  Moreover, the terms of the Commercial Agreement bestow on FAPAInvest the duty to act as a negotiating representative, which "plausibly states a claim that the Defendants (excluding RAH), by setting up this arrangement, are treating with an entity other than the exclusive bargaining representative for these employees," which at the present, is the Teamsters Union.  *Id.* at 15.

The definition of relevance is broadly construed for purposes of seeking discovery.  *See generally Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." (citations omitted)).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Simpson*, 220 F.R.D. at 359 (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome").  However, when a request for

discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *2 (D. Kan. March 7, 2008) (citation omitted); *Williams*, 192 F.R.D. at 705 (noting that when relevancy of a propounded request is not apparent, the proponent has the burden of establishing it).

The Court finds that the Teamsters Union has established the relevance of the requested documents, in part. As stated, the Teamsters Union seeks "production of all documents responsive to any subpoena request that have been withheld from production of the basis of FAPA's 'internal union' privilege/protective order assertions." *See* [#54] at 16. This request is rejected as too broad in scope, as not all of the documents withheld on the basis of internal union privilege appear relevant, and some documents withheld on the basis of internal union privilege are additionally withheld due to attorney-client or work product privilege. *See Privilege Log*, [#54-4]. However, review of the privilege log demonstrates to the Court that certain documents withheld only pursuant to the internal union privilege directly concern the LOA 67 or Commercial Agreement; for example, a document dated June 6, 2011, Bates No. P160, is related to board approval of the LOA, and is not designated as protected by attorney-client or work product privilege. *See* [#54-4] at 10. This document should be disclosed as relevant and not privileged.

On the other hand, the Court finds that the Teamsters Union does not meet its burden of showing that allegedly privileged documents related to FAPA's general bargaining strategy, as opposed to those specifically related to the LOA 67 and Commercial Agreement, are relevant. The hypothetical example proffered by the Teamsters Union directly concerns the LOA 67 and Commercial Agreement, which are what this case is about. Thus, the Court grants this portion of the Teamsters Union's Motion to Compel (and

in turn, denies this portion of FAPA's Motion to Quash) to the extent that FAPA must disclose any document directly related to the LOA 67 and Commercial Agreement, even if such document is limited to internal union communications, or communications with FAPA's own membership.  This Order does not require the disclosure of documents designated as protected by the attorney-client or work product privileges, but does require the disclosure of documents designated only as protected by the asserted internal union privilege, as long as such documents directly relate to the negotiation, memorialization, and implementation of the LOA 67 and Commercial Agreement.

### 2.    Privilege

The Court is not obligated to impose the "internal union" privilege asserted by FAPA. The Court recognizes that by excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26 attempts to strike a balance between conflicting interests. Privileges further the administration of justice and "should not be set aside lightly." *Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002).  *See also McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991) ("protections of the work-product privilege are important and should not be set aside lightly").  However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed. *Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995). "Evidentiary privileges are disfavored," *Zander v. Craig Hospital*, 743 F. Supp. 2d 1225, 1230 (D. Colo. 2010), and "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Neither FAPA nor the Teamsters Union cites case law recognizing the existence of an internal union privilege from this District or Circuit.  In light of the Court's obligation to

construe privileges narrowly, and in the absence of binding case precedent indicating the creation of a federal privilege applicable to union communications, the Court declines to uphold FAPA's assertion of an "internal union" or "labor relations" privilege, and this basis for nondisclosure is rejected. *See also Soc'y of Prof'l Eng'g Emp.. in Aerospace v. Boeing Co.*, Nos. 05-1251-MLB, 07-1043-MLB, 2009 WL 3711599, at *6 (D. Kan. Nov. 3, 2009) (rejecting creation of a "bargaining-strategy" privilege); *NLRB v. Serv. Emp. Int'l Union, Local 521*, No. C-07-80170MISC-JF, 2008 WL 152176, at *3 (N.D. Cal. Jan. 16, 2008) (recognizing administrative decisions characterizing bargaining strategy as confidential, in terms of disclosure to an employer, but rejecting confidentiality of bargaining strategy in the context of disclosure to the NLRB); *Patterson v. Heartland Indus. Partners, LLP*, 225 F.R.D. 204, 207 (N.D. Ohio 2004) (rejecting creation of "NLRA privilege" by administrative decisions which would preclude disclosure of bargaining strategy); *Parra v. Bashas' Inc.*, No. 02-591-PHX RCB, 2003 WL 25781409, at *5 n.2 (D. Ariz. Oct. 2, 2003) (rejecting NLRB administrative cases as unsupportive of a federal union-employee communications privilege).

In sum, this portion of the Teamsters Union's Motion to Compel is granted, and the corresponding portion of FAPA's Motion to Quash is denied, to the extent that FAPA must produce documents directly related to the negotiation, memorialization, and implementation of the LOA 67 and Commercial Agreement.  The Court rejects the application of an "internal union" privilege to these documents, but recognizes that some responsive documents may have also been withheld pursuant to attorney-client or work product privilege.  This Order does not require disclosure of responsive documents that are withheld as privileged pursuant to the attorney-client privilege or work product doctrine. The Court notes that this case has a protective order in place, and that the parties may

request a modification of the protective order to include an "attorneys' eyes only" confidentiality designation.

**B.     Undue Burden of Documents Post-Dating June 28, 2011**

FAPA states that it objects to production of documents dated after June 28, 2011, which is the date when the Teamsters Union became the exclusive bargaining representative of the Frontier pilots. [#62] at 33.  FAPA states that any documents in its possession post-dating June 28, 2011, are duplicative of documents that the Teamsters Union has obtained or could obtain from FAPAInvest.  *Id.*  FAPA expressly represents that "any such post-June 28, 2011 documents in FAPA's possession duplicated documents that should be in the possession of FAPAInvest and reflected on their face the recipients of the documents."  *Id.*  FAPA emphasizes its status as a non-party to this action, and asks the Court to find that compelling FAPA to produce duplicative documents would be an undue burden.  *Id.* at 33-34.

The Teamsters Union attests that FAPA simply does not meet its burden of demonstrating the undue burden of producing documents post-dating June 28, 2011. [#54] at 9-10.  The Teamsters Union states that, even if FAPA produced duplicative documents, such duplication is itself relevant "because the fact that FAPA has possession of documents concerning FAPAInvest's negotiations with the Company defendants is direct evidence that FAPAInvest is not some independent administrator of profit sharing and equity investment plans, but is, in fact, FAPA's alter ego." [#70] at 14-15.  The Teamsters Union contends that FAPA has failed to describe with detail any effort production would require.  *Id.* at 15.  The Teamsters Union argues that policy dictates rejecting one party's nondisclosure on the basis of another party's possession, because the Court's ability to police such representations is limited.  *Id.*

FAPA counters this argument, again emphasizing that its status as a non-party should weigh in favor of the Court finding that production of duplicative documents is an undue burden.  *See* [#75-1] at 7.  FAPA attests that, "with or without production of the documents by FAPA rather than one or more of the Defendants, the [Teamsters Union] will know 'that FAPA has possession' of the documents," based on counsel for FAPA's representations to that effect.  *Id.*

The Court may quash or modify a subpoena that imposes an undue burden on the recipient.  *See* Fed. R. Civ. P. 45(c)(3)(A)(iv).  Rule 26 governs the scope of discovery, in the context of a Rule 45 subpoena or otherwise.  9A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2452 (3d ed.).  Pursuant to Rule 26(b)(2)(C), where the burden of producing relevant discovery outweighs the likely benefit, the Court has discretion to limit the discovery requested.  *See Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

FAPA bears the burden to show that responding to the discovery requests at issue would be unduly burdensome.  *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003).  This burden can only be met by providing sufficient details or "a compelling showing of undue burden" to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *15 (D. Colo. Feb. 8, 2010) (citing cases). The Court must balance the Teamsters Union's need for the discovery at issue against the burden imposed on FAPA, and the status of FAPA as a non-party is a factor which weighs against disclosure.  *See Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09-cv-02080-REB-KLM, 2010 WL 3927783, at *3 (D. Colo. Oct. 1, 2010) (citation omitted).

Here, the Court concludes that FAPA fails to meet its burden of establishing that production of allegedly duplicative documents would be unduly burdensome. FAPA does not include an affidavit outlining the burden on FAPA, and pursuant to the representation by FAPA, it appears to the Court that FAPA has already reviewed and analyzed the responsive documents in order to make its argument that such documents are duplicative. Production of the documents should not take much more effort, as counsel has already done the heavy lifting. Furthermore, the Court finds that it would likely be unduly cumbersome at trial for the Teamsters Union to rely on counsel's statement that such documents are duplicative. For example, examination of witnesses about the existence of documents in FAPA's records based on counsel's representation that the documents are duplicates of those produced by FAPAInvest would be unnecessarily difficult. Thus, in the absence of a supported showing of burden (as opposed to merely a conclusory allegation that duplicative production always implicates burden), the Court concludes that FAPA must produce responsive documents postdating June 28, 2011 regardless of FAPAInvest's production, and such production may not be precluded by an assertion of "internal union" privilege. The Court grants the Teamsters Union's Motion to Compel and denies FAPA's Motion to Quash to this extent.

## C.    Overbreadth and Relevance of Six Specific Requests

Regarding the following specific requests, the Teamsters Union moves to compel production by FAPA of documents responsive to the requests, and FAPA moves for an order quashing the subpoena at issue to the extent that FAPA need not produce any documents beyond those which it has already produced. *See* [#54], [#62]. In large part, the Teamsters Union's and FAPA's arguments on these specific requests mirror those resolved above. The Court addresses each specific request as follows.

1.   <u>Request No. 3</u>: All documents which refer or relate to communications with RAH, Frontier, FAPA and/or any Frontier pilot regarding any matter related to LOA 67 and/or the Commercial Agreement.

FAPA contends that production of documents responsive to this request is precluded by the "internal union" privilege, and because such production would be duplicative to that requested by Request Nos. 1 and 2.  [#62] at 35-36.

The Court orders as follows, for the reasons stated above.  FAPA must produce any nonprivileged document responsive to Request No. 3, and FAPA may not use the "internal union" privilege as a basis for nondisclosure.  To the extent that production is duplicative to production in response to Request Nos. 1 and 2, FAPA must explicitly delineate which documents produced in response to Request Nos. 1 and 2 are further responsive to Request No. 3.  To this extent, the Teamsters Union's Motion to Compel is granted, and FAPA's Motion to Quash is denied.

2.   <u>Modified Request No. 4</u>: All documents which refer or relate to communications on or after June 28, 2011 between or among a person(s) acting on behalf of FAPA and FAPAInvest, RAH and/or Frontier regarding any matter, and all documents which refer or relate to communications on or after June 28, 2011 between or among a person(s) acting on behalf of FAPA and any Frontier pilot concerning LOA 67 and/or any of its terms, the Commercial Agreement and/or any of its terms including Company compliance, FAPAInvest, Frontier becoming a separate carrier not included within the RAH single transportation system found to exist by the NMB, and/or FAPA continuing to represent any pilot in dealings with Frontier concerning any term or condition of employment.

The Court reiterates its Order stated above regarding production of allegedly duplicative documents postdating June 28, 2011, in that FAPA must produce responsive documents postdating June 28, 2011 regardless of FAPAInvest's production, and such production may not be precluded by an assertion of "internal union" privilege.

3.      Request No. 5: All documents which refer or relate to the June 22, 2011 letter from "the Company" to the NMB attached to the Complaint as Exhibit 3 including, but not limited to, communications regarding the Company's contemplation of making and/or intention to make the requests to the NMB set forth in Complaint Exhibit 3.

FAPA asserts the "internal union" privilege as a basis for nondisclosure of responsive documents to this Request. [#62] at 38. As stated above, any documents responsive to this request withheld by FAPA on the basis of the "internal union" privilege must be disclosed.

4.      Request No. 6: All documents which refer or relate to the drafting and/or implementation of the Profit Sharing Program described in Section B of the Commercial Agreement attached to the Complaint as Exhibit 5.

FAPA objects to this request on the basis of the "internal union" privilege and on the basis that any responsive documentation post-dating June 28, 2011 is duplicative of FAPAInvest's production. [#62] at 38-39. Again, any documents responsive to this request withheld by FAPA solely on the basis of the "internal union" privilege or duplication must be disclosed.

5.      Request No. 13: All documents which refer or relate to any contemplated NMB filing that would exclude Frontier from the single transportation system the NMB determined to exist in Republic Airlines, Inc., et. al., 38 NMB 138 (2011).

FAPA objects to this Request as irrelevant, because "such an inquiry regarding events [at] an unknown future time has no relationship to the claims in the lawsuit." [#62] at 39. The Court agrees, as to the claims presently pending before the Court, but denies without prejudice the Teamsters Union's Motion to Compel as to this request, pending adjudication of the Teamsters Union's Motion for Leave to Amend.

6.      Request No. 14: All documents which refer or relate to FAPAInvest including, but not limited to, all financial records pertaining to FAPA expenditures on behalf of FAPAInvest.

FAPA objects to this Request on the basis of relevance.  *See* [#62] at 40-41.  On April 24, 2012, the Court ordered Defendant FAPAInvest to produce documents responsive to the Teamsters Union's request for FAPAInvest's financial records, including bank statements and internal accounting records which reflect member contributions, assets, liabilities, income and/or expenses.  *Ord.*, [#72] at 8-12.  The Court found that such request is relevant to the Teamsters Union's third claim, alleging the existence of an alter ego relationship between FAPAInvest and FAPA.  *Id.* at 12.  The same reasoning applies here. Thus, the Court grants the Teamsters Union's Motion to Compel and denies FAPA's Motion to Quash to the extent that FAPA must produce documents responsive to Request No. 14, and may not rely on an assertion of the "internal union" privilege as a basis for nondisclosure.

## III.  Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Compel Subpoena Compliance by Frontier Airlines Pilots Association [#54] and Non-Party Frontier Airline Pilots Association's Motion to Quash or Modify Subpoena in Part, or for Protective Order [#62] are **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART** as stated herein;

The Court rejects FAPA's assertion of an "internal union" privilege as a basis for nondisclosure of documents responsive to the Teamsters Union's subpoena requests;

FAPA must produce documents directly related to the negotiation, memorialization, and implementation of the LOA 67 and Commercial Agreement, with the exception of responsive documents that are withheld as privileged pursuant to the attorney-client

privilege or work product doctrine;

FAPA must further produce documents responsive to Request Nos. 3, 5, 6, and 14, and Modified Request No. 4; and

The Teamsters Union's Motion and FAPA's Motion are denied without prejudice as to a determination regarding Request No. 13.

IT IS FURTHER **ORDERED**, *sua sponte*, that the discovery deadline is extended up to and including **June 18, 2012**, for the purpose of completing the production of documents as ordered herein.

IT IS FURTHER **ORDERED**, *sua sponte*, that the dispositive motions deadline is extended up to and including **July 18, 2012**.

Dated: May 16, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge