IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02007-MSK-KLM

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,
REPUBLIC AIRWAYS HOLDINGS, INC., and
FAPAINVEST, LLC,

      Defendants.

FRONTIER AIRLINES PILOTS ASSOCIATION,

      Interested Party.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Plaintiff's Motion for Leave to Amend Complaint and Revise Scheduling Order** [Docket No. 59; Filed April 6, 2012] (the "Motion").  The Motion is referred to this Court for resolution [#60].  Defendants Frontier Airlines, Inc. ("Frontier") and Republic Airways Holdings, Inc. ("RAH") filed a Response in opposition to the Motion on April 27, 2012 [#73], as did Defendant FAPAInvest, LLC ("FAPAInvest") in a separate filing [#74].  Plaintiff International Brotherhood of Teamsters, Airline Division (the "Teamsters Union") submitted a Reply on May 11, 2012 [#76].  The Motion is thus ripe for review.  For the reasons stated below, the Court **GRANTS** the Teamsters Union's Motion.

1

## I.  Background

The Court incorporates the case background as set forth in its Order issued April 24, 2012 [#72].  On March 29, 2012, the District Judge issued an order granting in part and denying in part Defendants' Motion to Dismiss ("March 29, 2012 Order").  *See Ord.*, [#57].  The District Judge found that the Teamsters Union presents a plausible claim that Defendants Frontier and FAPAInvest violated the Railway Labor Act ("RLA") through the terms of the Commercial Agreement at issue in this lawsuit, because "even though [the Teamsters Union] is now the certified representative of the pilots covered by [the Collective Agreement], only FAPAInvest is permitted to negotiate the final terms of any plans or agreements governing such benefits," as stated in the Commercial Agreement.  [#57] at 13.  This has the effect of preemptively precluding the Teamsters Union "from being able to negotiate on behalf of members of the bargaining unit after its certification."  *Id.*  Moreover, the terms of the Commercial Agreement bestow on FAPAInvest the duty to act as a negotiating representative, which "plausibly states a claim that the Defendants (excluding RAH), by setting up this arrangement, are treating with an entity other than the exclusive bargaining representative for these employees," which at the present, is the Teamsters Union.  *Id.* at 15.

The District Judge dismissed two of the Teamsters Union's claims without prejudice, on the basis that the claims, Claims 2 and 4, allege only speculative harm.  *Id.* at 11.  Claims 2 and 4 concerned the Teamsters Union's assertion that "Defendants interfered with the representation election and the pilots' choice of representative," thereby "impact[ing] its standing to bargain for the Frontier pilots and to bargain effectively for the entire collection of pilots for which it was elected to be a representative," in violation of the RLA.

2

*Id.* at 5, 11. The District Judge determined that, on the record before it at the time, it "[could not] determine whether there is any practical impairment of [the Teamsters Union's] rights, and the chain of events necessary to affect its official authority [*i.e.*, the reversal of the NMB's finding that a single bargaining unit exists] is too attenuated and remote to amount to a real injury for the purposes of standing." *Id.* at 11. The District Judge instructed that these two claims could be resuscitated if the Teamsters Union were to come forward with facts demonstrating a concrete and particularized injury, presented by a request for leave to amend "within the deadline set in the Scheduling Order (or extension thereof)." *Id.*

Eight days after the March 29, 2012 Order, the Teamsters Union filed the instant Motion. The Teamsters Union contends that the "proposed First Amended Complaint alleges facts sufficient to demonstrate the concrete and particularized injury found lacking by the Court in Claims Two and Four." [#59] at 2. It represents that the facts relevant to the proposed claims "occurred subsequent to the filing of the [original] Complaint," namely, on receipt of produced emails on February 10, 2012, and other documents on February 20, 2012. *Id.*

All three Defendants oppose the relief requested. Defendants contend that the Teamsters Union does not present good cause (or excusable neglect) warranting modification of the Scheduling Order, and amendment would be improper because of undue delay and futility. *See* [##73, 74]. The Court addresses Defendants' objections below.

## II. Analysis

As a preliminary matter, the pleading amendment deadline expired on December 7, 2011. *Sched. Ord.*, [#25] at 6. The Teamsters Union's Motion was filed on April 6, 2012,

3

and is therefore untimely.  Accordingly, the Teamsters Union must provide good cause for its failure to timely move for amendment pursuant to Fed. R. Civ. P. 16(b)(4).[1]  If good cause is shown, the Court will then consider any arguments raised by the parties related to whether justice would be served by amendment.  Specifically, the Court should grant leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Because the Motion was filed "after the deadline for amending the pleadings, the Court employs a two-step analysis, first determining whether [the parties have] shown good cause to modify the Scheduling Order under [Fed. R. Civ. P. 16(b)(4)], then evaluating whether [the parties have] satisfied the standard for amendment of pleadings under [Fed. R. Civ. P.] 15(a)."  *Nicastle v. Adams County Sheriff's Office*, No. 10-cv-00816-REB-KMT,

---

[1]  Although the Tenth Circuit has not explicitly adopted this test related to amendment of pleadings generally, it this Court's practice, and indeed the practice of other judges in this District, to resolve untimely motions to amend first by considering the Rule 16(b)(4) good cause standard as a threshold issue.  *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (explaining that the Court of Appeals "adopted a similar interpretation of Rule 16(b)([4])'s 'good cause' requirement in the context of counterclaims asserted after the [pleading amendment] deadline" (citation omitted)).  *See also, e.g.*, *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000) (denying an untimely motion to amend solely on the basis of a failure to establish "good cause" within the meaning of Rule 16(b)(4)); *Nicastle v. Adams County Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL1464588 (Apr. 18, 2011) (unpublished decisions) ("Because the Court finds no good cause to amend the scheduling order, [it] will not address whether leave to amend is appropriate under Rule 15."); *see also Schneider v. City of Grand Junction, Colo.*, No. 10-cv-01719-MSK-KLM, slip op. (D. Colo. Apr. 25, 2011) [Docket No. 77], *adopted by* slip op. (July 12, 2011) [Docket No. 87] (unpublished decisions) (reviewing untimely motion to amend only as to good cause standard pursuant to Rule 16(b)(4)).  Simply, if good cause is not shown, the Court is not required to consider whether Rule 15(a) excuses that failure.  *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987) ("We hold that a district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay.'").

2011 WL 1465586, at *1 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL1464588 (Apr. 18, 2011) (unpublished decisions); *Colo. Visionary Acad.*, 194 F.R.D. at 687. This two-step analysis has been explained as follows:

> Rule 16(b)[(4)]'s good cause standard is much different [from] the more lenient standard contained in Rule 15(a). Rule 16(b)[(4)] does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this Court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l. Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted); *accord Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) ("Rule 16(b)[(4)]'s 'good cause' standard is much different [from] the more lenient standard contained in Rule 15(a). . . . Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . ."). If the Teamsters Union fails to show good cause under Rule 16(b)(4), there is no need for the Court to move on to the second step of the analysis, *i.e.*, whether the Teamsters Union has satisfied the requirements of Rule 15(a). *Nicastle*, 2011 WL 1465586, at *3. The Court addresses each step in turn.

## A.    Good Cause to Modify the Pleading Amendment Deadline

A Scheduling Order deadline, such as the pleading amendment deadline, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As noted above, to demonstrate good cause pursuant to Rule 16, the moving party must "show that it [was] diligent in attempting to meet the [pleading amendment] deadline, which means it must provide an adequate explanation for any delay." *Minter*, 451 F3d at 1205

n.4.  "While rigid adherence to the pretrial scheduling order is not advisable," *SIL-FIO v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990), the pleading amendment deadline requires that parties conduct discovery efficiently and promptly in order to timely comply. *See Granite Southlands Town Center LLC v. Alberta Town Center, LLC*, No. 09-cv-00799-ZLW-KLM, 2010 WL 2635524, at *2 (D. Colo. June 8, 2010) (noting that "deadlines to amend a party's pleading are set at the outset of the case to require [parties] to prioritize their discovery and attempt to obtain information that may be relevant to claim amendment sooner rather than later."); *Sanchez v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs*, No. 07-cv-01805-MSK-BNB, 2007 WL 4557842, at *1 (D. Colo. Dec. 20, 2007) (unpublished decision) (noting that "the purpose of the deadline to amend and add contained in the Scheduling Order is to force the parties to make any known amendments immediately so that all discovery in the case, including the earliest discovery, is taken with the claims and defenses as the parties expect them to be").  However, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]."  *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010) (citing *Pumpco*, 204 F.R.D. at 668-69).

Here, the Court identifies two related problems with the Teamsters Union's assertion of good cause (both issues are also raised by Defendants).  First, the Teamsters Union could have previously requested an extension of the amendment deadline in light of the ongoing discovery process, but failed to do so.  Second, even after the full briefing of the Motion to Dismiss and after receipt of the discovery underlying the Teamsters Union's proposed amendments in February, the Teamsters Union still did not request an extension

of time to amend, or at that time, permission to file an amended complaint which could have pre-empted the dismissal without prejudice of the Teamsters Union's Claims 2 and 4. Nevertheless, the Court finds the Teamsters Union's explanation for the delay adequate, as the Teamsters Union did not want to present a "moving target" for the District Judge's consideration. *See* [#76] at 7. Further, the Court is reluctant to refuse an extension of the amendment deadline considering the parties' ongoing discovery disputes which obviously have delayed production, as well as the District Judge's denial of Claims 2 and 4 explicitly without prejudice.

The Teamsters Union is correct that generally, "a party should be granted an opportunity to amend [its] claims prior to a dismissal with prejudice." [#76] at 2 (citing *Meadows at Buena Vista, Inc. v. Ark. Valley Publ'g Co.*, No. 10-cv-02871-MSK-KMT, 2012 WL 502688, at *2 n.5 (D. Colo. Feb. 15, 2012)). Although it is a close call given the Teamsters Union's failure to request an extension of the deadline earlier in the progression of this case, the Court finds that the Teamsters Union establishes two-fold good cause to extend the deadline for amendment of pleadings: the February 2012 disclosure of discovery and the March 29, 2012 Order's dismissal without prejudice of Claims 2 and 4. Therefore, the first step of the analysis pertaining to Rule 16(b)(4) is satisfied, and it is thus appropriate for the Court to review the Motion pursuant to Rule 15(a).

**B.    Leave to Amend the Complaint**

The Court has discretion to grant a party leave to amend its pleadings. *Foman*, 371 U.S. at 182; *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

7

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Id.* (quoting Fed. R. Civ. P. 15(a)(2)).

As stated, Defendants oppose allowing leave to amend on the bases of undue delay and futility. The Court rejects the arguments based on undue delay for the same reasoning stated above related to good cause. Regarding futility, an amendment is futile if it would not survive a motion to dismiss. *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (citing *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). "In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, and the allegations in the complaint must be accepted as true." *Id.* (citation omitted). Moreover, "[a]ny ambiguities must be resolved in favor of plaintiff, giving [it] 'the benefit of every reasonable inference' drawn from the 'well-pleaded' facts and allegations in [its proposed] complaint." *Id.*

The Teamsters Union explains that the purpose of the proposed amendments is to remedy the deficiencies identified in the March 29, 2012 Order, that is, the lack of facts alleging a plausible concrete and particularized injury as to its Claims 2 and 4. *See* [#59] at 2. Defendants Frontier and RAH contend that the proposed amendments "still do not demonstrate the requisite particularized injury and fail to state a claim for relief under RLA Sections 2, Third and Fourth." [#73] at 7. Defendants Frontier and RAH restate their arguments presented in the Motion to Dismiss, asserting that the RLA provisions at issue focus "on the period before a union is certified," thus limiting the circumstances in which a plaintiff can use these provisions as the basis for a cause of action in the post-certification

context (which is what is at issue in this case).  *Id.* at 8.  These Defendants further believe that the Teamsters Union's proposed amendments do not allege facts supporting its conclusory statements that the effectiveness of its representation has been impaired.[2]  *Id.* at 9.

In Reply, the Teamsters Union recounts a sequence of events in September 2011, just after this lawsuit was initiated, demonstrating that it has suffered a particularized and concrete injury.  [#76] at 12-13.  In essence, the Teamsters Union asserts that the actions of Defendants to memorialize an "Amendment No. 1" to the Commercial Agreement resulted in monetary harm to Frontier pilots.  *Id.* at 12-13.  The Teamsters Union contends that its exclusion from the negotiations leading to the Amendment No. 1 further exacerbated this harm, because it, as the exclusive bargaining representative, was not present to negotiate on behalf of the Frontier pilots.  *Id.* at 13.  The same occurred again in December 2011, resulting in an "Amendment No. 2."  *Id.* at 14.  The Teamsters Union avers that the Frontier pilots would have been entitled to certain wages and benefits, but for the exclusion of the Teamsters Union from the negotiations in September and December 2011.  *Id.*

The District Judge recognized that the harm claimed by the Teamsters Union as to its Claims 2 and 4 was an impairment of its ability "to bargain for the Frontier pilots and to bargain effectively for the entire collection of pilots for which it was elected to be a representative."[3]  *Ord.*, [#57] at 11.  As explained above, the District Judge rejected this

---

[2]  Defendant FAPAInvest does not raise futility in its Response.  *See* [#74].

[3]  The District Judge additionally determined that, although the provisions of the RLA pertinent to Claims 2 and 4 "generally concern the pre-certification rights and freedoms of

claimed harm as too tenuous, as to both the Teamsters Union's official authority (*i.e.*, that bestowed by election) and its practical influence. *Id.*

The Court finds that the Teamsters Union's proposed allegations restating Claims 2 and 4 demonstrate adequate harm to the Teamsters Union's practical influence. Accepting the allegations as true, the negotiation and memorialization of Amendment Nos. 1 and 2 in September and December 2011 affected the Teamsters Union's ability to negotiate on behalf of the Frontier pilots, and resulted in continuation of the wage and benefit concessions implemented by the LOA 67. *See* [#59-1] at 8-12. The Teamsters Union contends that its exclusion from these negotiations resulted in harm to the Frontier pilots, in that the wage and benefit concessions were not allowed to expire. *See id.* Importantly, in its proposed request for relief, the Teamsters Union asks for "[a]n injunction requiring RAH and Frontier to pay all Frontier pilots the wages and benefits they would have received but for the wage and benefit concessions of LOA 67," which would provide relief directly connected to the allegations related to Amendment Nos. 1 and 2. *See id.* at 15. Therefore, the Court finds that the allegations in the proposed First Amended Complaint remedy the deficiencies identified in the March 29, 2012 Order as to the Teamsters Union's previous Claims 2 and 4, amendment would not be futile, and leave to amend pursuant to Rule 15(a) is warranted.

---

unorganized employees, judicial intervention in post-certification disputes is appropriate" in certain contexts, thereby resolving this part of Defendants Frontier and RAH's argument against amendment. [#57] at 9.

### III.  Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that Plaintiff's Motion [#59] is **GRANTED**, and the Clerk's Office is directed to enter the First Amended Complaint located at Docket No. 59-1, effective as of the date of this Order.

IT IS FURTHER **ORDERED** that Defendants shall answer or otherwise respond to the First Amended Complaint on or before **June 6, 2012**.

IT IS FURTHER **ORDERED** that the discovery cut-off remains set at June 18, 2012, and the dispositive motion deadline remains set at July 18, 2012.  *See* [#78].

Dated: May 22, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

11