IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02007-MSK-KLM

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,
REPUBLIC AIRWAYS HOLDINGS, INC., and
FAPAINVEST, LLC,

    Defendants.

FRONTIER AIRLINES PILOTS ASSOCIATION,

    Interested Party.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendants Frontier Airlines, Inc. and Republic Airways Holdings, Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 37 for Plaintiff's Failure to Comply With Fed. R. Civ. P. 30(b)(6)** [Docket No. 93; Filed August 29, 2012] (the "Motion"). Plaintiff filed a **Response to Motion of Company Defendants for Sanctions Pursuant to F. R. Civ. P. 37** [Docket No. 99; Filed September 11, 2012] (the "Response"). Defendants filed a **Reply in Support of Motion for Sanctions** [Docket No. 101; Filed September 14, 2012] (the "Reply"). The Court held a hearing on the Motion on September 18, 2012. For the reasons set forth below, the Motion [#93] is **GRANTED IN PART and DENIED IN PART.**

**I. Background**

Plaintiff International Brotherhood of Teamsters, Airline Division ("IBT") brought this action pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.,* which governs labor relations in the airline industry. The case is about a dispute over representation of pilots employed by Defendant Frontier Airlines, Inc. ("Frontier"), and involves agreements entered into by Frontier, Frontier Airline Pilots Association ("FAPA"), Defendant FAPAInvest, LLC ("FAPAInvest"), and Defendant Republic Airways Holdings, Inc. ("RAH").[1] I refer to Frontier and RAH collectively as the "Airlines" and the agreements collectively as the "Agreements."

RAH acquired Frontier in 2009. [#80] at 3. At that time, IBT was the exclusive bargaining representative for pilots employed by RAH and FAPA was the exclusive bargaining representative for pilots employed by Frontier. *Id.* IBT asserts that in October of 2010, it applied to the National Mediation Board ("NMB") for a determination that certain RAH subsidiaries, including Frontier, comprise a "single transportation system" for purposes of labor representation of the pilots employed by those airlines.[2] *Id.* at 4. IBT further asserts that in April of 2011, the NMB determined that a single transportation system exists. *Id.* at 4, 7. On June 28, 2011, the NMB certified IBT as the pilots' exclusive

---

[1] According to the Complaint, FAPA and Frontier entered into Letter of Agreement 67 ("LOA 67") on June 10, 2011 which, among other things, amended the collective bargaining agreement between those parties. IBT further alleges that FAPAInvest, Frontier and RAH entered into a "Commercial Agreement" on June 24, 2011. [#1] at 5, 7.

[2] Pursuant to the Railway Labor Act, the NMB is responsible for effectuating railroad and airline employees' rights of self-organization when a representation dispute exists. As part of those responsibilities, the NMB certifies representation of employees for collective bargaining purposes. *Rocky Mountain Airways Maint. Ass'n v. Rocky Mountain Airways, Inc.*, 796 F. Supp. 1395, 1397 (D. Colo. 1992) (citing *Int'l Bhd. of Teamsters v. Tex. Int'l Airlines, Inc.*, 717 F.2d 157, 161 (5th Cir. 1983)).

bargaining representative. *Id.* In the interim, the Airlines entered into the Agreements, which took effect between the date when the NMB determined that the RAH subsidiaries are a single carrier and the date when the NMB certified IBT as the pilots' bargaining representative. *Id.* In short, IBT asserts that the purpose and effect of the Agreements was to attempt to prevent IBT from representing the Frontier pilots. *See, generally, Plaintiff's Motion for Summary Judgment* [#108] at 12-15.

In accordance with its contention that the Agreements unlawfully undermine its position as the pilots' exclusive bargaining representative and violate certain provisions of the RLA, IBT brought this lawsuit seeking a declaratory judgment that the Agreements are null and void, as well as an injunction barring RAH, Frontier, and FAPAInvest from taking action in furtherance of the Agreements. [#80] *at 15.*

The Motion arises from the Airlines' attempt to depose IBT pursuant to Fed. R. Civ. P. 30(b)(6). The Airlines issued a deposition notice to IBT, and counsel for the parties engaged in discussions concerning the topics specified in the notice prior to the deposition. See [#93-2]; *Response* [#99] at 2-7. IBT designated Stephen Nagrotsky, Deputy Director of the Union's Airline Division, as the Rule 30(b)(6) deponent. Mr. Nagrotsky's deposition was taken by counsel for the Airlines on July 19, 2012. [#99-7].

## II. Analysis

**A.    The Disputed Deposition Topics and the Parties' Arguments**

The Airlines contend that IBT failed to adequately prepare Mr. Nagrotsky for the Rule 30(b)(6) deposition. In particular, the Airlines complain about his answers to questions pertaining to topics numbered 1, 2, 4, 8, 9, 11, 12, 13, 16, 17 and 18 in the deposition

notice.[3] The parties' arguments regarding the disputed topics are addressed below.

**Topics 1 and 2:**

1. [IBT's] application to the National Mediation Board seeking a finding that air carriers owned by RAH comprised a single transportation system for the craft or class of Pilots.

2. The decision issued by the National Mediation Board finding that the carriers owned by RAH comprised a single transportation system for the craft or class of Pilots.

The Airlines assert that at the time of his deposition, Mr. Nagrotsky had few answers to questions on either topic. More specifically, they point to his testimony that he did not know precisely why IBT sought a single carrier determination by the NMB, what events led to the application for a single carrier determination, or whether anyone from IBT spoke to anyone from the Airlines prior to seeking the single carrier determination. *Motion* [#93] at 6. The Airlines also state that Mr. Nagrotsky was unprepared to discuss the factors purportedly relied on by the NMB in concluding that a single carrier system existed, and that he was unaware that the Agreements "call for changes in those areas." *Id.*

IBT asserts that before Mr. Nagrotsky's deposition, its counsel, Mr. Wilder, told the Airlines' counsel, Mr. Hall, "that [IBT's] position was reflected in its filings to NMB, [that IBT's] employees would not have any knowledge beyond what is reflected in the filings, and the only 'facts' relevant to this litigation are the NMB's decisions themselves." *Response*

---

[3] IBT contends that topics 12 and 13 are mooted by its voluntary dismissal of "Count III" of the First Amended Complaint, which alleged violations of RLA Sections 2, First and 6. [#98]. However, because IBT filed the Motion to Voluntarily Dismiss Count III almost two months *after* Mr. Nagrotsky's deposition, the eventual dismissal of that Count does not resolve the issue of whether the deponent was adequately prepared to be deposed on topics 12 and 13. At the time of the Rule 30(b)(6) deposition Count III remained a part of the relief sought by IBT, thus topics 12 and 13 were not moot. To the extent that IBT suggests that it can avoid responsibility for failing to adequately prepare the witness to address deposition topics in a Rule 30(b)(6) deposition by subsequently dismissing claims relating to those topics, the Court disagrees.

[#99] at 4-5. IBT asserts that the Airlines' counsel "did not disagree with [IBT] counsel's position" that the information sought in these topics is "immaterial to this lawsuit." *Id.* at 10-13.

In their Reply, the Airlines argue that "some person or persons within [IBT] made the decision that the relationship between Frontier and the other RAH-owned subsidiaries was such that, in [IBT's] view, they constituted a single carrier. . . . [The Airlines] were entitled to inquire into what factors caused [IBT] to believe a single carrier application was warranted, and whether the absence of certain of those factors would have changed [IBT's] position. . . ." *Reply* [#101] at 6. The Airlines further assert that "[IBT] cannot argue through its attorneys that it was the intent, purpose and effect of the [Airlines] in entering into the Commercial Agreement and the LOA 67 to undermine [IBT's] representation of the pilots, and then not have anyone testify to allow [the Airlines] to challenge those allegations on cross-examination." *Id.* at 8.

**Topics 4, 8, 9 and 11:**

4. [IBT's] representation of Frontier pilots since June 28, 2011.

8. The impact that [IBT] claim[s] the Commercial Agreement (including any amendments thereto) and/or LOA 67 have had on [IBT's] ability to negotiate benefits of all RAH subsidiary pilots.

9. The impact that [IBT] claim[s] the Commercial Agreement (including any amendments thereto) and/or LOA 67 have had on [IBT's] ability to represent the pilots of the carriers owned by RAH, including the negotiation of a new collective bargaining agreement for the pilots of the carriers owned by RAH.

11. [IBT's] representation of the pilots of the carriers owned by RAH since June 28, 2011.

The Airlines contend that these topics relate to IBT's assertion that it suffered concrete and particularized injury to its ability to represent the pilots at all RAH-owned

carriers as a result of the Agreements. *Motion* [#93] at 7; *Amended Complaint* [#80] ¶¶ 39, 43, 47, 51. For its part, IBT responds that Mr. Nagrotsky "testified, and elaborated upon his testimony *ad nauseum*, in response to [the Airlines'] counsel's repetitive inquiries" about IBT's injuries. *Response* [#99] at 14-15. Specifically, IBT mentions Mr. Nagrotsky's testimony about "bargaining leverage . . . lost" by IBT and the Frontier pilots' receipt of nothing in exchange for continued wage and benefit concessions to the Airlines. IBT opines that the Airlines' complaint that Mr. Nagrotsky's testimony was "too general" and "lacks factual support" may be addressed at trial or by motion. IBT further opines that the Airlines' questions about opinions of Local 357 personnel, whether IBT spoke to FAPA about transitioning the pilots to IBT, whether Frontier pilots have refused to become IBT members, whether there was a dues dispute between Frontier pilots and IBT, and whether Frontier pilots want IBT to represent them and maintain this lawsuit are irrelevant. IBT further asserts:

> It is not an issue in this case whether [IBT's] decisions are supported by the Frontier pilots as a minority of the craft or class, or whether they desire to be represented by [IBT], FAPA, FAPAInvest or some other entity. The only fact that matters in that regard is that the NMB has decided [IBT] is the Frontier pilots' representative to make decisions on behalf of the pilots it represents. . . . If [the Airlines] needed testimony regarding dues disputes, the desires of Frontier pilots, discussions concerning the transition of representation from FAPA to [IBT], and the other matters recited in their motion, their 30(b)(6) notice should have identified those inquiries.

*Id.* at 17.

The Airlines reply that IBT had an obligation to gather information about its injuries from its "agent," Local 357, "to which it has delegated the day-to-day representation of the Frontier pilots." *Reply* [#101] at 9. The Airlines further assert that because IBT "has specifically alleged harm to its ability to provide 'effective representation' to the Frontier

pilots" and is seeking damages on their behalf, the question of whether "[IBT] has the support of the Frontier pilots with respect to the actions purportedly taken on their behalf [is] . . . directly germane to this suit." *Id.* at 11-12.

**Topics 12 and 13:**

12. [IBT's] contention that RAH and Frontier have violated the collective bargaining agreement covering the pilots of the 'Republic subsidiaries' (as that term is defined in [the] Complaint in this matter), as alleged in Count V of [the] Complaint.

13. Whether [IBT] has filed a grievance or otherwise availed itself of the Railway Labor Act's minor dispute resolution process with respect to its allegation that RAH and Frontier have violated the collective bargaining agreement covering the pilots of the 'Republic subsidiaries' (as that term is defined in [the] Complaint in this matter), as alleged in Count V of [the] Complaint.

The Airlines contend that the IBT representative was obligated to obtain information from Local 357 to respond to questions about the grievance process, because IBT has acknowledged that it delegated day-to-day representation of the pilots to this "sub-unit." The Airlines assert that "[IBT] cannot claim that the entity with knowledge necessary to respond to topics listed in a proper 30(b)(6) notice is its agent but then fail to discuss those issues with its agent." *Motion* [#93] at 13.

In addition to its contention that these deposition topics are mooted by its withdrawal of Count III of the Complaint, IBT asserts that Mr. Nagrotsky testified that IBT's claim is based on the plain language of the collective bargaining agreement and he "engaged in argumentative banter with [the Airlines'] counsel regarding [IBT's] interpretation of the bargaining agreement." IBT further asserts that if more information was desired, it was not set forth in the deposition notice, and is irrelevant nevertheless. *Response* [#99] at 18-19.

**Topics 16 and 17:**

7

  16. The remedies [IBT] seeks in this matter, included but not limited to any damages [IBT] is seeking against RAH and Frontier in this matter.

  17. [IBT's] claimed injuries in this lawsuit.

The Airlines assert that Mr. Nagrotsky had no information on these topics aside from the prayer for relief in the First Amended Complaint. *Motion* [#93] at 13. IBT reiterates its argument regarding deposition topics 4, 8, 9, and 11, namely that the topics are mooted by the voluntary dismissal of Count III, the deponent responded to questions regarding IBT's injuries "*ad nauseum*," certain questions were not relevant, and the deposition notice was not sufficiently specific. *Response* [#99] at 19-20.

**Topic 18:**

  18. [IBT's] knowledge regarding the intent of Frontier, RAH and/or the Frontier Airline Pilots' Association ("FAPA") in entering into LOA 67 and the Commercial Agreement, and any amendments thereto.

The Airlines assert that the deponent "was not knowledgeable about these topics [sic], did not review documents relating to these topics [sic], did not speak to anyone who would have knowledge regarding the specifics of these topics [sic], and could not respond to questions related to the specifics of these topics [sic]." *Motion* [#93] at 14. For its part, IBT reiterates its position that its counsel notified the Airlines' counsel before the deposition that IBT "had no independent knowledge of [the facts indicated in topic 18] and that all knowledge was obtained from [the Airlines] in discovery in this case." IBT further asserts that "it is not the purpose of F. R. Civ. P. 30(b)(6) to require a designated witness of a corporation to testify regarding documents and information never within the possession of the corporation, and only within the possession and knowledge of the corporation's attorneys by reason of discovery responses served in this case." *Response* [#99] at 20-21.

8

However, the Airlines reply that IBT made the same "purpose and intent argument" in its initial pleadings in the case, before it had received documents in discovery. They further ask: "How are the [Airlines] supposed to know what knowledge [IBT] had regarding its own allegations in this suit except through the discovery process?" *Reply* [#101] at 13.

**B.     The Law Relating to Rule 30(b)(6) Depositions**

"A deposition under Rule 30(b)(6) differs in significant respects from the normal deposition. To begin with, the notice of deposition must 'describe with reasonable particularity the matters for examination.'" 8A C. Wright, A. Miller, & R. Marcus, Federal Practice & Procedure § 2103 (3d ed. 2010) (hereinafter "Wright & Miller"). As several courts and commentators have pointed out, the goal of this requirement "is to enable the responding organization to identify the person who is best situated to answer questions about the matter, or to make sure that the person selected to testify is able to respond regarding that matter." *Id.* Accordingly, there is an implicit obligation on the deponent to prepare the witness. However, the rule implies an equivalent obligation on the deposing party to "designate with painstaking specificity, the particular subject areas that are intended to be questioned." *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007); *see also Newman v. Borders, Inc.*, 257 F.R.D. 1 (D.D.C. 2009). "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where . . . the [deponent] cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

It is no secret that "questioning of a corporate representative pursuant to Rule

30(b)(6) about the facts underlying allegations in the pleadings may present a particular problem verging on taking the deposition of counsel." Wright & Miller § 2103. Even when the topics presented in the deposition notice do not require examination of the corporation's attorney, they may nevertheless promote questions which invade the attorney-client privilege or work product doctrine. *See Miller v. Union Pac. R. Co.*, No. 06-2399-JAR-DJW, 2008 WL 4724471, at *6 (D. Kan. Oct. 24, 2008).

In addition, Rule 30(b)(6) depositions often involve the issue of whether the information sought is "reasonably available" to the corporate designee, particularly when information is sought about or from corporate affiliates or other related parties. The federal courts have rejected an approach which limits the "reasonably available" requirement to only information possessed by entities over which the corporate deponent has direct legal control. *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394-95 (D.N.J. 2011). Instead, Courts have frequently used the "control" standard of Rule 34(a) as a guideline to determine whether information of corporate affiliates is "reasonably available" to the deponent. *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 Civ. 3016, 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002).The majority view appears to be that information is within a deponent's "control" and thus "reasonably available" for purposes of Rule 30(b)(6) when the deponent "either can secure [information] from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit." *Sanofi-Aventis*, 272 F.R.D. at 394 (citing *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 140-41 (3d. Cir. 1988)).

"The fact that the designee cannot answer every question posed at the deposition does not mean that the organization failed to satisfy its obligation to prepare the witness."

*Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008). In determining whether a corporate deponent has met its Rule 30(b)(6) obligations, Courts have examined the degree and type of effort made by the organization to prepare a witness in light of the deposition topics, and whether the organization acted "in good faith." *Id.*; *see also Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1147 (10th Cir. 2007). Moreover, Courts have made clear that "there is no obligation to produce witnesses who know every single fact, only those that are relevant and material to the incident or incidents that underlie the suit." *Wilson v. Lakner*, 228 F.R.D. 524, 528-29 n.7 (D. Md. 2005).

Finally, a word about the procedure for addressing disputes regarding Rule 30(b)(6) depositions. Because of the unique prerequisite that Rule 30(b)(6) deposition topics must be identified in advance, disputes about the topics are most effectively addressed in advance of the deposition. As is obvious from the Motion, disputes can include disagreements about the specificity of the deposition notice, the relevance of the information sought, whether the information sought is protected by the attorney-client privilege or work product doctrine, and whether the information sought is "reasonably available" to the deponent. Although counsel here indicate that they discussed the deposition notice in advance of the deposition, they disagree on the conclusions they reached. Neither party happened to document those conclusions. Nor did either party seek pre-deposition relief from the Court by filing a motion for protective order or a motion to compel.

In the event that the parties' attempts to resolve disagreements about a Rule 30(b)(6) deposition are unsuccessful, filing a pre-deposition motion is the appropriate course of action. *Ecclesiastes 9:10-11-12, Inc.,* 497 F.3d at 1147 (holding "failing a

negotiated resolution [of disputes over a Rule30(b)(6) deposition, the deponent] could have sought a protective order from the district court.")   "If a party receiving  [a Rule30(b)(6) deposition] notice believes that the notice is improper for some reason, that party does not have the right to refuse to obey the deposition notice on any ground."  *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 165 (D. Mass. 2007).

> While it is indeed good practice to discuss any issues respecting a 30(b)(6) deposition notice with the party which noticed the deposition in an attempt to work out an agreement, in the absence of an agreement, a party cannot decide on its own to ignore the notice.  What is not proper practice is to refuse to comply with the notice, put the burden on the party noticing the deposition to file a motion to compel, and then seek to justify non-compliance in opposition to the motion to compel.  Put simply and clearly, a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order.

*Id.* at 166.

The case cited above, *First DataBank,* involved a party's failure to appear in response to a disputed Rule30(b)(6) deposition notice, but the court's holding is equally applicable here.  Merely forewarning opposing counsel that the information sought is not relevant or could be privileged, or neglecting to inform opposing counsel that the information sought is not in the direct control of the deponent and that the deponent has no intention of trying to obtain it, is unacceptable.  In this case, IBT submits that it "believed it had a negotiated resolution on matters that [the Airlines] now complain about."  *Response* [#99] at 9.  To the contrary, the Airlines contend that the parties merely resolved disputes relating to topics 3, 19 and 20, which are not at issue here.  Regarding the topics in dispute here, the Airlines assert that "at no time was there any agreement that [the Airlines] would not inquire into those topics or that they otherwise would limit their inquiry on those

matters." *Reply* [#101] at 2, 4.

**C.     Application of the Law to These Circumstances**

The Airlines specifically request two forms of relief: "sanctions" in the form of an award of attorneys' fees and costs for the deposition, and that IBT be ordered to provide a witness to testify about the topics on which Mr. Nagrotsky's testimony was allegedly deficient. *Motion* [#93] at 17.

The Court initially addresses the two forms of relief sought by the Airlines in the order in which they are presented. Regarding the Airlines' request for sanctions, Fed. R. Civ. P. 37 governs sanctions for failure to cooperate in discovery. The Rule contemplates the filing of a Motion to Compel regarding a deponent's failure to answer a deposition question, and further provides as follows:

> If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's. . . response was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(3)(B)(I) and (a)(5)(A). Hence, not only are sanctions implicitly dependent on the outcome of a motion to compel, they are also dependent on the court's examination of the moving party's good faith efforts "to obtain the discovery without court action," and the extent to which the response was "substantially justified."

Here, the Airlines essentially filed a motion to compel simultaneously with a motion for sanctions. Rule 37 makes clear that an award of sanctions is proper only if the motion

to compel is granted. Thus, the proper starting point for the analysis is the part of the Motion which seeks to compel additional Rule 30(b)(6) deposition testimony.

Regarding the Airlines' request to compel further deposition testimony, Rule 26(b) provides that "discovery of any matter relevant to the subject matter involved in the action" may be ordered "for good cause." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). According to the Airlines, the "good cause" for their request is Mr. Nagrotsky's failure to answer questions relating to the topics outlined above.

In my view, the "good cause" issue requires examination of several factors, including whether the parties made sufficient efforts to confer in good faith about disputes prior to the deposition, whether the deposition notice was sufficiently specific, whether the unanswered questions sought relevant information, whether the deponent sufficiently answered the questions in dispute, and whether the deponent made sufficient efforts to obtain information from its agents, to name a few. In light of the procedural posture of this case, where the parties hotly dispute the extent, content and results of their pre-deposition communications, where neither party sought pre-deposition relief from the Court, and where the entire deposition was conducted without a single objection on the record to which either party refers, the Court is at a loss to determine whether "good cause" exists. If the Airlines are correct about the scope of pre-deposition communications and agreements between the parties, good cause for a second deposition may well exist. If IBT is right about reaching an agreement with the Airlines that the proposed topics were too indefinite, too broad, or simply irrelevant, it is more difficult to find "good cause" for a second bite at the apple. The bottom line is that the parties' versions of the facts are diametrically opposed, and the Court does not know who to believe.

14

In light of this peculiar state of affairs, the court is inclined to permit a limited "do over" under certain strict conditions. Those conditions are as follows:

1. The deposition will be limited to no more than four hours in length and will avoid any unnecessary duplication of questions previously asked and answered.

2. The Airlines will draft a deposition notice which "designate[s] with painstaking specificity, the particular subject areas that are intended to be questioned." *E.E.O.C.*, 243 F.R.D. at 426.

3. The parties will confer in advance *in writing* about any disputes relating to the deposition topics.

4. If the parties are not able to resolve any disputes about the deposition notice in advance and if the Airlines are unwilling to withdraw any disputed topics, IBT will file a written Motion for Protective Order before the deposition occurs. The filing of such a Motion will stay the deposition until the Court rules on the Motion. See D.C.COLO.LCivR 30.2A.

Finally, in an attempt to guide the parties regarding the next deposition, the Court offers the following observations.

The parties obviously view the scope of the case very differently. Both sides' perspectives are troubling to the Court, for different reasons. For example, the Airlines presume that an unknown IBT decision-maker decided that Frontier and the RAH-owned subsidiaries constitute a "single carrier" before seeking the NMB certification. This is a presumption born of superficial analysis, as it is much more likely that IBT's *lawyers* decided that the subsidiaries constitute a single carrier and advised IBT to pursue the issue

with the NMB. Failure to consider the impact of the attorney-client privilege and attorney work product doctrine on any attempts to obtain information about IBT's purported "decision" is unwise.

In addition, the Airlines fail to explain why IBT's view of the factors that supported the NMB's single carrier conclusion matters here. The NMB, not IBT, was the ultimate determiner of whether the Airlines constitute a single carrier. The factors that *IBT* viewed as important to the single carrier determination are not likely to be meaningful to the Court's determination, as the issue is more likely to evolve around the factors that the *NMB* found to be significant to that determination.

Moreover, in light of the above point, the Airlines' emphasis on whether the absence of certain factors would have changed IBT's position about seeking a single carrier determination is mystifying. For purposes of this litigation, it doesn't matter whether IBT would have "changed its mind" about seeking a single carrier determination. The fact is that it sought and the NMB granted such a determination. To the extent that forcing IBT to address whether certain information might have "changed its mind" about a single carrier determination could lead down the path toward a resolution of this dispute, the subject can – and should – be explored informally, not through a Rule 30(b)(6) deposition. Simply stated, information about which factors caused IBT to request a single carrier determination is probably of little value to the legal issues in the case, despite the fact that it could be helpful to settlement negotiations.

The Airlines' Reply contends that IBT must offer a witness to testify about the intent of the Agreements. This argument appears ill-considered. Despite the fact that IBT alleged before discovery that the intent of the Agreements was to undermine IBT

representation of the Frontier pilots, IBT is not required to present a witness to so testify. Instead, IBT may cross-examine the Airlines' witnesses about the intent of the Agreements, or simply introduce the Agreements into evidence and let them speak for themselves. In fact, the parol evidence rule may bar any testimony regarding the "intent" of the Agreements. *See Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) (en banc).

On the other side of the equation, IBT's approach to the deposition appears to the Court to have been unduly lackadaisical, both in terms of its efforts to obtain relevant information and in terms of its efforts to address the scope of the deposition in advance. Misunderstandings about communications apparently occurred on both sides, but because IBT had the responsibility to file a motion for protective order regarding disputed issues, it should have taken better care to document the disputes.

In addition, IBT is clearly obligated to obtain information in the possession of Local 357 which is relevant to the claims and deposition topics. Any attempt to hide behind the organizational niceties to avoid providing such information is impermissible. *See Sanofi-Aventis*, 272 F.R.D. at 394-95.

Accordingly,

IT IS HEREBY ORDERED that the Motion [#93] is **GRANTED IN PART AND DENIED IN PART,** as set forth above. The request for an additional Rule 30(b)(6) deposition of the Union is **granted** under the conditions outlined above. The request for sanctions is **denied**.

Dated: February 19, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge